UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/26/09
```

-------------------------------------------x
                             :

POLINA GERTSKIS,                 :

                Plaintiff,     :      07 Civ. 2235 (TPG)

         - against -      :      **OPINION**

NEW YORK CITY DEPARTMENT OF  :
HEALTH AND MENTAL HYGIENE, ET AL., :

          Defendants.   :

-------------------------------------------x

     This case is brought by <u>pro se</u> plaintiff Polina Gertskis against her former employer, the New York City Department of Health and Mental Hygiene ("DOHMH"), and an official at DOHMH named Peter Backman (collectively, the "City defendants"), as well as plaintiff's former union, District Council 37 and Local 375 of the American Federation of State, County, and Municipal Employees (collectively, "the Union").

     Plaintiff asserts that the City defendants discriminated against her on the basis of her sex, national origin, and religion, sexually harassed her, and retaliated against her for filing complaints of discrimination. Plaintiff also asserts that the Union breached its duty to her of fair representation. Plaintiff's claims are brought under 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., section 296 of New York's Human Rights Law, and section 8-107 of the New York City Administrative Code.

Defendants move for summary judgment.  The motions are granted.

## **Facts**

The following facts are undisputed, except where otherwise indicated.

Plaintiff is Jewish, female, and was born in the Ukraine.  She immigrated to the United States in 1988 and became a U.S. citizen in 1989.  In 1993, she was hired by DOHMH as an Assistant Chemist in the Public Health Laboratory, which tests a variety of samples for substances such as lead, drugs, and toxins.

The events at issue in this litigation began in 2001, when plaintiff received a performance evaluation from her supervisor rating her as "very good," rather than "outstanding."  Plaintiff alleges that her supervisor chose not to assign her an "outstanding" rating solely because she is Jewish.  Plaintiff also alleges that beginning in October 2003, the same supervisor assigned fewer overtime hours to plaintiff than he did to other staff, again for discriminatory reasons.  This prevented plaintiff from earning the extra compensation that would have been paid for such work.

In November 2003, plaintiff and two other DOHMH Assistant Chemists filed grievances under their union contract claiming that they were working "out of title."  That is, they asserted that they were performing the duties of an Associate Chemist, a more senior position, without being compensated at that level.  DOHMH issued a decision on these grievances in April 2004.  It found that one of plaintiff's colleagues was working out of title, and was therefore entitled to be promoted to the position of Associate Chemist.  Plaintiff's

grievance, however, was denied.  As discussed below, the Union appealed this decision on plaintiff's behalf.

On May 5, 2004, plaintiff submitted the first of at least four complaints to the DOHMH Equal Employment Opportunity ("EEO") office.  The complaint alleged that her supervisor had failed to promote her because of her Ukrainian origin.  The EEO office determined that the complaint was unsubstantiated.

In October 2004, plaintiff applied for a vacant Associate Chemist position.  However, DOHMH did not consider her application because it was received after the application deadline had passed.

On October 10, 2004, plaintiff submitted her second complaint to the EEO office.  She alleged that her supervisor discriminated against her because of her religion by being overly critical of her work and failing to distribute overtime opportunities equitably.  The EEO office determined that this complaint was also unsubstantiated.

On December 9, 2004, plaintiff applied and was interviewed for another vacant Associate Chemist position.  Plaintiff was given a score of 14.5 for the interview, which placed her sixth in the group of ten employees interviewed.  DOHMH ultimately awarded the position to another DOHMH employee, also a Ukrainian, Jewish woman, who had received an interview score of 25, had a broader educational background than plaintiff, and had undertaken a broader set of responsibilities at DOHMH than had plaintiff.

In February 2005, another Associate Chemist position became available.  DOHMH reviewed the pool of candidates who had applied for the December

2004 vacancy, which included plaintiff, and offered the position to an individual from the private sector, a Nigerian woman. Although plaintiff had received a slightly higher interview score than the other individual, DOHMH believed that plaintiff did not have as much experience operating a type of laboratory equipment that would be central to the work of that position. Plaintiff, however, contends that she had sufficient experience with that equipment. Around the same time, another Assistant Chemist was given an "Associate Chemist" title. DOHMH states that this was done because the employee was also DOHMH's Quality Assurance Officer, and that this change did not require a salary increase.

On February 14, 2005, two Associate Chemists were assigned to supervise plaintiff. According to DOHMH, this occurred because the Associate Chemist who was supervising her had been assigned additional administrative responsibilities, and no longer had time to directly supervise laboratory work. According to plaintiff, this was done in retaliation for various complaints that she had made.

In April 2005, plaintiff asked for approval to take vacation for most of August 2005. Backman denied the request because plaintiff's laboratory was typically very busy in August, and plaintiff's absence during that time would have been disruptive to the laboratory's work. Plaintiff filed a grievance to challenge this decision, but the grievance was resolved when plaintiff agreed to take vacation somewhat later than she had initially requested.

On June 1, 2005, plaintiff submitted a third complaint to the EEO office alleging that she had not been promoted to an Associate Chemist position as a result of her sex, religion, and national origin. The EEO office determined that this complaint had no merit.

On July 21, 2005, according to plaintiff, Backman displayed a "facial expression of lust" during a conversation with plaintiff.

In October 2005, plaintiff met with Backman and alleged that her name had been improperly removed from hundreds of DOHMH records. She claimed that this was done in order to undermine her claim that she was working out of title. In response, Backman assigned a DOHMH employee to investigate the claim. After meeting with plaintiff and reviewing the relevant records, the investigator determined that plaintiff's claim was unsubstantiated. Plaintiff claims that around the same time, Backman visited her office and tried to kiss her.

On November 9, 2005, an arbitration was held to consider whether plaintiff's out-of-title grievance had been properly decided in 2004. The arbitration was held before a neutral arbitrator selected by the parties. Defendant Backman acted as DOHMH's representative, and an attorney from the Union represented plaintiff. However, the Union attorney refused to offer into evidence certain documents that plaintiff had obtained from DOHMH files. The attorney believed that these documents, which apparently included patient medical records, were protected by federal privacy laws and had been removed

- 5 -

from DOHMH without permission.  On December 21, 2005, the arbitrator affirmed the denial of plaintiff's grievance.

Plaintiff asked the Union to seek to vacate the arbitrator's decision, but the Union denied this request because it did not believe that there were any grounds for such action.  Plaintiff was dissatisfied with this decision, and therefore challenged the Union's representation before the Board of Collective Bargaining of the City of New York.  Specifically, plaintiff claimed that, at the arbitration, the Union attorney should have introduced into evidence the documents discussed above.  The Board of Collective Bargaining dismissed this complaint on April 6, 2006.

On May 6, 2006, plaintiff alleges that Backman again visited her workspace, this time with another DOHMH official, and displayed "derogatory facial expressions of a sexual nature" while speaking to her.

On June 2, 2006, plaintiff asked to take a one-year unpaid leave of absence, from July 2006 to July 2007.  Her request was approved.  However, she did not return to work as scheduled, and her current status is officially "absent without leave."

In late 2006, plaintiff sought the Union's assistance again, which was denied as follows.  On October 23, 2006, the Union denied plaintiff's request for assistance with filing another out-of-title grievance.  On November 14, 2006, the Union denied plaintiff's request for assistance in filing a sexual harassment lawsuit.

On November 8, 2006, plaintiff filed a fourth complaint with the EEO office. Like her June 2005 complaint, this complaint alleged that she had not been promoted to an Associate Chemist position because of her sex, religion, and national origin.  The EEO office determined that this complaint had no merit.

On December 21, 2006, plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") that raised many of the discrimination and harassment claims asserted here.  She amended the EEOC complaint on January 25, 2007.

On March 15, 2007, plaintiff filed the instant action.  On May 29, 2007, she filed an EEOC complaint alleging, among other things, retaliation for bringing this case.  On August 14, 2007, plaintiff filed an amended complaint with leave of the court.

Plaintiff's lengthy allegations against the City defendants can be summarized as follows.  First, she alleges that by failing to promote her, requiring her to perform out-of-title work, altering records related to her out-of-title grievance, and failing to adequately investigate her EEO claims, City defendants discriminated against her on the basis of national origin, religion, and sex.  Second, she alleges that by assigning her a "very good" rating rather than an "outstanding" rating in her 2001 performance evaluation, and by preventing her from earning sufficient overtime, City defendants discriminated against her on the basis of religion.  Third, she alleges that City defendants discriminated against her on the basis of sex by changing her supervisors in

February 2005 and by disapproving her request for vacation time in April 2005. Fourth, she alleges that defendant Backman sexually harassed her on July 21, 2005 and May 6, 2006 by displaying lewd facial expressions.  Fifth, she alleges that the City and Backman retaliated against her for filing EEO complaints and this lawsuit by denying her request to review her personnel file and refusing to issue a letter of reference on her behalf.

Plaintiff's primary claim against the Union is that it breached its duty of fair representation by failing to adequately represent her at the arbitration and by refusing to assist her in October and November 2006.

In separate motions, the City defendants and the Union have moved for summary judgment on plaintiff's claims.

### The City Defendants' Motion

Summary judgment may be granted if "there is no genuine issue as to any material fact," such that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In making this determination, the court must draw all justifiable inferences in favor of the non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Statutes of Limitations

As a threshold matter, City defendants argue that plaintiff's Title VII claims are time-barred.

For a cause of action under Title VII to be timely, a plaintiff must have filed a claim with the EEOC within 300 days of the occurrence of the allegedly

unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1).  Under the recently
enacted Ledbetter Fair Pay Act, "an unlawful employment practice occurs . . .
when a discriminatory compensation decision or other practice is adopted . . .
or when an individual is affected by application of a discriminatory . . .
practice, including each time wages, benefits, or other compensation is paid" as
a result of such a practice.  Id. § 2000e-5(e)(3)(A).  Since plaintiff's first
complaint to the EEOC was filed on December 21, 2006, any Title VII claims
accruing before February 24, 2006, are time-barred.

With only insignificant exceptions, plaintiff's Title VII claims are timely.
The crux of plaintiff's claims is that she received inadequate compensation as a
result of DOHMH's repeated and allegedly discriminatory failures to promote
her to the Associate Chemist position.  These decisions continued to affect
plaintiff until she began her leave of absence in June 2006.  Most of her Title
VII claims are therefore not time-barred.

However, plaintiff's Title VII claims with respect to her 2001 performance
evaluation, the change in supervisors in 2005, the denial of a vacation request
in 2005, and the award of overtime hours prior to February 24, 2006, are time-
barred.  Nonetheless, plaintiff also challenges these actions under New York
law and 42 U.S.C. §§ 1981 and 1983, which provide for a three-year limitations
period.  Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); N.Y.
C.P.L.R. § 214; N.Y. City Admin Code. § 8-502(e).  With the exception of the
claim relating to the 2001 performance evaluation, those claims are not time-
barred.

The Discrimination Claims

To withstand a motion for summary judgment, plaintiff's claims must survive the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The same analysis is applied to plaintiff's claims under Title VII, §§ 1981 and 1983, New York state law, and New York City regulations. Patterson, 375 F.3d at 226-27; Demoret v. Zegarelli, 451 F.3d 140, 152 (2d Cir. 2006); Landwehr v. Grey Adver. Inc., 211 A.D.2d 583 (1st Dep't 1995).

Under this framework, plaintiff has the initial burden of establishing a prima facie case of discrimination by showing, by a preponderance of the evidence, that defendants' actions give rise to an inference of unlawful discrimination. Id. This can be satisfied by demonstrating membership in a protected class, qualification for the position, an adverse employment action, and preference for a person not of the protected class. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); James v. N.Y. Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000). In particular, to qualify as an adverse employment action, there must have been a materially adverse change in the terms and conditions of employment, such as termination or demotion. Mathirampuzha v. Potter, 548 F.3d 70, 78-79 (2d Cir. 2008). The burden then shifts to defendants, who must "articulate some legitimate, nondiscriminatory reason" for their actions. Id. Finally, plaintiff may attempt to demonstrate that the reason articulated by defendants was in fact pretext. Id. at 804.

Plaintiff has failed to carry her burden with respect to her discrimination claims. First, none of the DOHMH's decisions not to promote plaintiff appear to have been made for discriminatory reasons. The December 2004 promotion was given to another Ukrainian, Jewish woman instead of plaintiff, indicating that DOHMH did not display a preference for someone outside the protected class. With respect to both the December 2004 and the March 2005 promotions, defendants have stated that other candidates were selected because their backgrounds were significantly better suited to the position than plaintiff's. With regard to the October 2004 promotion, DOHMH has stated that plaintiff's application was submitted after the deadline. Plaintiff has not demonstrated that these explanations were mere pretext.

Second, plaintiff has failed to raise a genuine issue of fact or establish a prima facie case of discrimination with respect to her claims of out-of-title work. Plaintiff was determined in a grievance hearing not to have been performing the duties of an Associate Chemist. This determination was consistent with DOHMH's subsequent decision not to promote plaintiff in part because she did not have sufficient experience performing the duties of an Associate Chemist. Plaintiff has produced no evidence to suggest that her supervisors forced her to undertake extra work for discriminatory reasons. Similarly, there is no genuine issue of fact with regard to plaintiff's claims that DOHMH discriminated against her by falsifying records regarding her work. DOHMH investigated those claims and found them to be unsubstantiated, and plaintiff has produced no evidence that her claims had any merit.

- 11 -

Third, with regard to the overtime opportunities, even if plaintiff had established a prima facie case, City defendants have offered two reasons to explain why plaintiff earned less money from overtime than some of her colleagues. First, plaintiff frequently refused to work overtime. Second, supervisors were careful to ensure that overtime funds were used only when necessary, and it often appeared to plaintiff's supervisor that she would attempt to allocate work to overtime hours that could have been completed during the regular work day. In support of this explanation, DOHMH has produced evidence demonstrating that plaintiff's productivity during the regular work day was significantly lower than that of her colleagues. Plaintiff has produced no evidence to rebut these explanations.

Fourth, plaintiff's remaining claims do not establish a prima facie case of discrimination because they do not amount to adverse employment actions. When plaintiff's supervisors were changed and her vacation request was denied, she did not suffer a materially adverse change in the conditions of her employment. With respect to plaintiff's claim that the DOHMH EEO office discriminated against her by failing to investigate her complaints, that claim is flatly contradicted by the EEO office's detailed reports of its investigations.

Finally, it is worth noting that plaintiff's laboratory appears to have been a rather diverse workplace in which people from a wide variety of ethnic and religious backgrounds were hired and promoted. The employment decisions appear to have been made based on the individual qualifications of these employees, without regard to national origin, sex, or religion.

- 12 -

The Sexual Harassment Claim

Plaintiff alleges that Backman sexually harassed her on three occasions. The complaint alleges two instances of offensive conduct, both of which amount to apparently lewd facial expressions that Backman purportedly made during conversations with plaintiff.  The complaint does not allege that Backman's harassment was of a verbal or physical nature.  However, in opposing the instant motion, plaintiff raised a new allegation that Backman attempted to kiss her and implied that she would not prevail in the grievance arbitration unless she complied with his demands.

Claims of sexual harassment are placed into one of two categories.  First, a plaintiff may claim that an employer took a "tangible employment action," such as firing or failing to promote her, because she refused to submit to a supervisor's sexual demands.  Mormol v. Costco Wholesale Corp., 364 F.3d 54, 57 (2d Cir. 2004).  In order to qualify as a tangible employment action, the action must constitute a "significant change in employment status."  Id. at 58. Second, a plaintiff may claim that an employer altered the conditions of employment by creating a hostile work environment through sexual harassment.  Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001).  In order to show that a hostile work environment was created, a plaintiff must demonstrate both that "she personally considered the environment hostile, and that the environment rose to some objective level of hostility."  Id.  The objective indicators of hostility include the nature,

frequency, and severity of the discriminatory conduct, and whether it unreasonably interferes with an employee's work performance.  Id.

Plaintiff has failed to demonstrate that there is any issue of fact with regard to her sexual harassment claims.

First, plaintiff was not subject to either a tangible employment action or a hostile work environment as a result of the alleged encounters with Backman.  Indeed, virtually no change in her employment occurred during the relevant timeframe.  Notably, DOHMH's decisions not to promote plaintiff were made before either of these encounters.  Although she alleges, in essence, that she lost the grievance arbitration because she rejected Backman's demands, the matter was decided by a neutral arbitrator.  Plaintiff also alleges that after she rejected Backman's first advance, her supervisors were changed, she was awarded insufficient overtime, and her vacation request was denied partially as a result of these encounters.  As discussed above, however, these actions were not significant enough to constitute either a tangible employment action or a hostile work environment.

Second, the allegation regarding Backman's attempt to kiss plaintiff, which is not even properly before the court, has no merit.  Again, plaintiff apparently never reported such an incident to anyone at DOHMH.  In e-mails that plaintiff sent to the EEO office contemporaneously, in October 2005, she complained about various statements made by Backman but did not allege any sexual harassment.  Although plaintiff had filed three complaints with the EEO office by that point, she waited one year after this alleged incident before filing

- 14 -

another one, and still did not make the allegation of an attempted kiss.

Finally, when plaintiff filed a complaint with the EEOC and the complaint in

the instant case, she confined her allegations of sexual harassment to the facial

expressions, and did not make this additional allegation until considerably

later in the litigation.

The Retaliation Claim

Plaintiff alleges that in response to her filing of this lawsuit and an EEOC

complaint, City defendants retaliated against her by refusing to issue a letter of

reference on her behalf, and by denying her request to review her personnel

file. As indicated, the request for this file came after the commencement of this

action.

Plaintiff has produced absolutely no evidence that these actions

occurred. On the other hand, City defendants have produced an affidavit

stating that in response to a request from one potential employer for

information about plaintiff's employment, DOHMH officials provided all of the

information requested. The record also indicates that plaintiff was provided

with a significant amount of information during discovery in this case,

including her personnel file. There is therefore no genuine issue of fact with

regard to plaintiff's allegations of retaliation.

### The Union's Motion

Plaintiff asserts that the Union breached its duty of fair representation

and discriminated against her by (1) inadequately representing her at the

November 2005 arbitration, (2) declining to assist her in filing another out-of-title grievance on October 23, 2006, and (3) declining to assist her with a sexual harassment claim on November 14, 2006.

Unions have a duty of fair representation toward their members that is breached "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). Under New York law, a claim that a union breached its duty of fair representation of a member must be brought within four months of the date that the employee "knew or should have known that the breach has occurred" or was harmed by the breach. N.Y. C.P.L.R. § 217(2)(a).

Plaintiff's claim that the Union inadequately represented her at the arbitration therefore accrued, at the latest, when the arbitrator issued a decision on December 21, 2005. The relevant time period expired on April 21, 2006. Since plaintiff filed this action on March 15, 2007, this claim is time-barred. Plaintiff's claim regarding the decision on October 23, 2006 not to file a grievance on her behalf is also time-barred. That claim should have been brought by February 23, 2007. The filing of this action on March 15, 2007, was therefore untimely.

Plaintiff's claim regarding the November 14, 2006 decision to deny her assistance in filing a sexual harassment claim is also, technically, untimely. However, since this action was filed just after the four-month period ended, the court will consider this claim on the merits. As discussed above, there was no merit to plaintiff's sexual harassment allegations. The record is clear that the

Union diligently represented plaintiff in a significant number of disputes with management, even when plaintiff's positions in those disputes were of questionable merit.  Plaintiff has offered no evidence to suggest that the Union decided not to assist her with the sexual harassment claim for improper reasons.  There is no basis for finding that the Union's conduct toward her was arbitrary, discriminatory, or in bad faith.

### **Conclusion**

Plaintiff has failed to raise a genuine issue of material fact with regard to her claims, and defendants are entitled to summary judgment in their favor. The motions for summary judgment are granted, and this case is dismissed.

SO ORDERED.

Dated:   New York, New York
         March 26, 2009

Thomas P. Griesa
U.S.D.J.